UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

GABRIEL PALMER,
     Defendant.

Criminal No.: 1:15-CR-00103

(Chief Judge Jones)

(electronically filed)

### Government's Response to Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

Defendant, Gabriel Palmer, has filed a motion asking this Court to reduce his sentence of imprisonment under 18 U.S.C. § 3582(c)(1)(A) to time served and order his immediate release, relying on the general threat posed by the COVID-19 pandemic and his claimed "exposure to the virus."[1] Doc. 55, at 1. The United States respectfully opposes the motion. This Court should deny the motion with prejudice because Palmer has not met his burden of establishing that a sentence reduction is warranted under the statute.

---

[1] The record is void of any evidence that Palmer has been exposed to the COVID-19 virus.

## Factual Background

On March 14, 2016, Palmer was convicted of Coercion and
Enticement of a Minor to Engage in Sexual Activity, in violation of 18
U.S.C. § 2422(b). Doc. 48. This Court sentenced him to 120 months of
imprisonment and 15 years of supervised release. Doc. 48. Palmer has
served just over half of that sentence (approximately 64 months of the
120-month sentence).[2] He now moves under 18 U.S.C. § 3582(c)(1)(A)
for a sentence reduction resulting in his immediate release from the
custody of the Bureau of Prisons (BOP), relying on the threat posed by
the COVID-19 pandemic.

## I.    BOP's Response to the COVID-19 Pandemic.

As this Court is well aware, COVID-19 is a dangerous illness that
has caused many deaths in the United States in a short period of time
and that has resulted in massive disruption to our society and economy.
In response to the pandemic, BOP has taken significant measures to
protect the health of the inmates in its charge.

---

[2] Palmer was arrested by local authorities on March 28, 2015. He
appeared on a writ on June 2, 2015 and was ordered detained.

BOP has explained that "maintaining safety and security of [BOP] institutions is [BOP's] highest priority." BOP, Updates to BOP COVID-19 Action Plan: Inmate Movement (Mar. 19, 2020), available at https://www.bop.gov/resources/news/20200319_covid19_update.jsp.

Indeed, BOP has had a Pandemic Influenza Plan in place since 2012. BOP Health Services Division, Pandemic Influenza Plan-Module 1: Surveillance and Infection Control (Oct. 2012), available at https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf. That protocol is lengthy and detailed, establishing a multi-phase framework requiring BOP facilities to begin preparations when there is first a "[s]uspected human outbreak overseas." *Id.* at i. The plan addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates.

Consistent with that plan, BOP began planning for potential coronavirus transmissions in January of 2020. At that time, the agency established a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control, including by reviewing guidance from the World Health Organization.

On March 13, 2020, BOP began to modify its operations, in accordance with its Coronavirus (COVID-19) Action Plan ("Action Plan"), to minimize the risk of COVID-19 transmission into and inside its facilities. Since that time, as events require, BOP has repeatedly revised the Action Plan to address the crisis.

BOP's operations are presently governed by Phase Seven of the Action Plan. The current modified operations plan requires that all inmates in every BOP institution be secured in their assigned cells/quarters, in order to stop any spread of the disease. Only limited group gathering is afforded, with attention to social distancing to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access. Further, BOP has severely limited the movement of inmates and detainees among its facilities. Though there will be exceptions for medical treatment and similar exigencies, this step as well will limit transmissions of the disease. Likewise, all official staff travel has been cancelled, as has most staff training.

All staff and inmates have been and will continue to be issued face masks and strongly encouraged to wear an appropriate face covering when in public areas when social distancing cannot be achieved.

Every newly admitted inmate is screened for COVID-19 exposure risk factors and symptoms. Asymptomatic inmates with risk of exposure are placed in quarantine for a minimum of 14 days or until cleared by medical staff. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. In addition, in areas with sustained community transmission, all facility staff are screened for symptoms. Staff registering a temperature of 100.4 degrees Fahrenheit or higher are barred from the facility on that basis alone. A medical officer can place a staff member with a stuffy or runny nose on leave.

Contractor access to BOP facilities is restricted to only those performing essential services (e.g. medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended absent authorization by the

Deputy Director of BOP. Any contractor or volunteer who requires access will be screened for symptoms and risk factors.

Social and legal visits were stopped as of March 13, and remain suspended at this time, to limit the number of people entering the facility and interacting with inmates. In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month. Tours of facilities are also suspended. Legal visits will be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screening protocols for prison staff.

Further details and updates of BOP's modified operations are available to the public on the BOP website at a regularly updated resource page: www.bop.gov/coronavirus/index.jsp.

In addition, in an effort to relieve the strain on BOP facilities and assist inmates who are most vulnerable to the disease and pose the least threat to the community, BOP is exercising greater authority to designate inmates for home confinement. On March 26, 2020, the Attorney General directed the Director of the Bureau of Prisons, upon

considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, *see* 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g). Congress has also acted to enhance BOP's flexibility to respond to the pandemic. Under the Coronavirus Aid, Relief, and Economic Security Act, enacted on March 27, 2020, BOP may "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" if the Attorney General finds that emergency conditions will materially affect the functioning of BOP. Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621 note). On April 3, 2020, the Attorney General gave the Director of BOP the authority to exercise this discretion, beginning at the facilities that thus far have seen the greatest incidence of coronavirus transmission. As of this filing, BOP has transferred 7,247 inmates to home confinement. Federal Bureau of Prisons, *COVID-19*

*Home Confinement Information*, at

https://www.bop.gov/coronavirus/index.jsp.

Taken together, all of these measures are designed to mitigate sharply the risks of COVID-19 transmission in a BOP institution. BOP has pledged to continue monitoring the pandemic and to adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

Unfortunately and inevitably, some inmates have become ill, and more likely will in the weeks ahead. But BOP must consider its concern for the health of its inmates and staff alongside other critical considerations. For example, notwithstanding the current pandemic crisis, BOP must carry out its charge to incarcerate sentenced criminals to protect the public. It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry. It must marshal its resources to care for inmates in the most efficient and beneficial manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access

to health care in these difficult times. And it must consider myriad other factors, including the availability of both transportation for inmates (at a time that interstate transportation services often used by released inmates are providing reduced service), and supervision of inmates once released (at a time that the Probation Office has necessarily cut back on home visits and supervision).

## II. Palmer's Request for a Sentence Reduction.

Palmer is incarcerated at FMC Butner in Butner, North Carolina. FMC Butner has had only six inmates and five staff members who are confirmed  active for COVID-19.

https://www.bop.gov/coronavirus/index.jsp. In addition, five inmates and 11 staff members have recovered from the virus.  *Id.*  There have been no deaths at FMC Butner.  *Id.*

BOP records indicate that the warden received a compassionate-release request from Palmer.  Doc. 55, Ex. B-2.  The warden denied the request on March 24, 2020.  *Id.*  In denying the request, the warden's response explained that Palmer did not meet the medical criteria in that he does remains independent with self-care.  *Id.*

As such, Palmer appears to have exhausted his administrative remedies per Department of Justice guidance, in that he filed a request to the warden of the facility where he is incarcerated and the warden denied his request. The record is void of any confirmation that Palmer appealed the warden's decision utilizing the Administrative Remedy Process.

On May 7, 2020, Palmer filed a motion with this Court seeking his release claiming that his health issues make him more susceptible to the COVID-19 virus. Doc. 52. Specifically, Palmer states he has ulcerative proctitis/colitis, symptomatic anemia, Hepatitis C, rectal bleeding, blindness in one eye (from birth), depression, anxiety, post-traumatic stress, ileostomy, an ostomy bag and "maybe Crohn's." Doc. 55, at 1. His medical claims are generally supported by his medical records. However, Palmer's medical records also show on July 10, 2020, he rejected every psychiatric medication offered to him. Ex. 1, p.1.

## Legal Framework

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, grant a defendant's motion to reduce his or her term of

imprisonment. Before filing that motion, however, the defendant must first request that BOP file such a motion on his or her behalf. § 3582(c)(1)(A). A court may grant the defendant's own motion for a reduction in his sentence only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

If that exhaustion requirement is met, a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." USSG § 1B1.13.[3]

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor

---

[3] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease,

[or] advanced dementia." USSG § 1B1.13, cmt. n.1(A)(i). Second, the

standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other

conditions and characteristics that qualify as "extraordinary and

compelling reasons" related to the defendant's age and family

circumstances. USSG § 1B1.13, cmt. n.1(B)-(C). Finally, the note

recognizes the possibility that BOP could identify other grounds that

amount to "extraordinary and compelling reasons." USSG § 1B1.13,

cmt. n.1(D).

## <u>Arguments</u>

This Court should deny Palmer's motion with prejudice on either

of two independently sufficient grounds. First, Palmer has not

established that "extraordinary and compelling reasons" support a sentence reduction; second, Palmer has not met his burden to show that a reduction is warranted in light of the danger that Palmer would pose to the community and the relevant § 3553(a) factors.

## I. PALMER'S MOTION FOR A REDUCTION OF HIS SENTENCE SHOULD BE DENIED ON THE MERITS.

First, Palmer has not identified "extraordinary and compelling reasons" for that reduction within the meaning of § 3582(c)(1)(A) and the Sentencing Commission's policy statement. Second, Palmer poses a significant danger to the public and the statutory sentencing factors do not weigh in favor of his release.

### A. Palmer Has Not Identified "Extraordinary and Compelling Reasons" for a Sentence Reduction.

Palmer's request for a sentence reduction should be denied because he has not demonstrated "extraordinary and compelling reasons" warranting release. As explained above, under the relevant provision of § 3582(c), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy

statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include, as relevant here, certain specified categories of medical conditions. USSG § 1B1.13, cmt. n.1(A).

For that reason, to state a cognizable basis for a sentence reduction based on a medical condition, a defendant first must establish that his condition falls within one of the categories listed in the policy statement. Those categories include, as particularly relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG 1B1.13, cmt. n.1(A). If a defendant's medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), his or her motion must be denied.

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not fall

into either of those categories and therefore could not alone provide a basis for a sentence reduction. The categories encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020);; *see also United States v. Eberhart*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required

by § 3582(c)(1)(A).").[4] To classify COVID-19 as an extraordinary and compelling reason would not only be inconsistent with the text of the statute and the policy statement, but would be detrimental to BOP's organized and comprehensive anti-COVID-19 regimens, could result in the scattershot treatment of inmates, and would undercut the strict criteria BOP employs to determine individual inmates' eligibility for sentence reductions and home confinement. Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a world-wide viral pandemic.

---

[4] *See also, e.g.*, *United States v. Coles*, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020) (denied for 28-year-old inmate at institution with outbreak); *United States v. Okpala*, 2020 WL 1864889 (E.D.N.Y. Apr. 14, 2020); *United States v. Weeks*, 2020 WL 1862634 (S.D.N.Y. Apr. 14, 2020); *United States v. Haney*, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) (denied for 61-year-old with no other conditions); *United States v. Pinto-Thomaz*, 2020 WL 1845875 (S.D.N.Y. Apr. 13, 2020) (two insider trading defendants with less than a year to serve have no risk factors); *United States v. Korn*, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("in this Court's view, the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme."); *United States v. Carver*, 2020 WL 1892340 (E.D. Wash. Apr. 8, 2020).

Palmer has not identified a medical condition that falls within one of the categories specified in the policy statement's application note. Even is Palmer is not expected to recover from his medical issues, they are not so serious that he is unable to provide self-care within the environment of a correctional facility. Indeed, Palmer's health issues are both controlled with medical care and treatment. Simply put, Palmer's asserted conditions do not rise to the level of severity required under the policy statement and he remains independent with self-care.

Palmer claims that he is immunocompromised due to prolonged use or corticosteroids and liver disease place him at "high risk for severe illness or death from COVID-19." Doc. 55 at 3. This is not true. In support of his claim, he cites a report by the CDC. However, the report is outdated and has been revised. As of July 17, 2020, none of Palmer's conditions are identified by the CDC as increasing a person's risk for developing serious illness from COVID-19.

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fco

[ronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-](ronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-)

[higher-risk.html](higher-risk.html).  Immunocompromised state (weakened immune

system) is on the list, but "from solid organ transplant."  *Id.*  Palmer did

not have a solid organ transplant.  Immunocompromised state from

immune weakening medicines is only on the list of conditions that

"might" place someone at an increased risk, but this is too speculative

and Palmer has not presented evidence of a immunocompromised state.

*Id.*  For these reasons, Palmer has failed to establish an "extraordinary

and compelling reason" for a sentence reduction under § 3582(c). The

motion should be denied.

     **B.**    **Palmer Still Poses a Significant Danger to the Safety of the Community and the § 3553(A) Factors Strongly Weigh Against His Release.**

Alternatively, Palmer's request for a sentence reduction should be

denied because he has failed to demonstrate that he is not a danger to

the safety of the community or otherwise merits release under the §

3553(a) factors.

At the present time, it is apparent that, but for the COVID-19

pandemic, Palmer would present no basis for compassionate release.

His medical issues do not present an increased risk and are well controlled. He remains independent with self-care. His medical issues, while presumably uncomfortable do not present any impediment to his ability to provide self-care in the institution. The only question, then, is whether the risk of COVID-19 changes that assessment.

Palmer is not entitled to relief. This Court must consider all pertinent circumstances, including the 3553(a) factors, and possible danger to the community. At present, Palmer's medical conditions are appropriately managed at the facility, which is also engaged in strenuous efforts to protect inmates against the spread of COVID-19, and would also act to treat any inmate who does contract COVID-19. To date there are only six inmates and five prison staff who are confirmed active for COVID-19 in the institution where Palmer is housed, which demonstrates the facilities ability to manage the virus and keep the numbers under control. Conversely, while it is unknown where Palmer would go if released, it is presumed he would return to Pennsylvania. Pennsylvania has had 111,078 confirmed cases of COVID-19 and 13,545 deaths due to the virus.

https://www.bing.com/search?q=pennsylvania+COVID+19+cases&src=IE-SearchBox&FORM=IESR4N.

Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2). Additionally, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. *See* § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020).

This Court should deny a sentence reduction on that basis alone. Palmer is a sex offender who engaged in sexual acts with a minor. PSR ¶ 5. He provided child pornography to that victim to coerce and entice that minor to engage in sexual activity with him. Child pornography that the minor described as too young. PSR¶ 6.

The § 3553(a) factors strongly disfavor a sentence reduction. The nature and circumstances of the offense are particularly serious and Palmer distributed child pornography to a minor and engaged in repeated sex acts with the minor. There must be just punishment for this offense. The 120 month sentence must remain to deter Palmer

from future conduct and to deter others from committing this heinous crime.

Moreover, the factors militating against a sentence reduction outweigh Palmer's asserted medical concerns related to COVID-19. Even if this Court concludes (contrary to the argument set forth in the previous section) that Palmer has established "extraordinary and compelling reasons" for a sentence reduction based on the risk of contracting COVID-19, Palmer has not established that he would be less vulnerable to COVID-19 if he were released.

Accordingly, in light of Palmer's record and the totality of relevant circumstances, this Court should deny the motion for a sentence reduction.

## Conclusion

For these reasons, this Court should deny Palmer's motion for a sentence reduction on the merits.

Respectfully submitted,

DAVID J. FREED
United States Attorney

Dated:  July 31, 2020

s/ Daryl F. Bloom
DARYL F. BLOOM
Assistant United States Attorney
Daryl.Bloom@USDOJ.gov
PA 73820

228 Walnut Street, Suite 220
P.O. Box 11754
Harrisburg, Pennsylvania 17108
(717) 221-4482
(717) 221-2246, *facsimile*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 1:15-CR-103 |
| v. | (Chief Judge Jones) |
| GABRIEL PALMER,<br>    Defendant. | (electronically filed) |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

On this 31st day of July 2020, she caused to be served a copy of the foregoing document by electronic means by sending a copy to the e-mail addresses stated below:

Quin Sorenson, Esquire
Quin_sorenson@fd.org

/s/ Carol Manies
Carol Manies
Legal Assistant